## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN DOUGLAS MCCASKILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17−cv−0355−SMY |
| | ) |
| BLAKE WOODS, | ) |
| COLE, | ) |
| DEBBIE PERKINS, | ) |
| CHRISTOPHER, | ) |
| PIE, and | ) |
| R. NANCE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Stephen Douglas McCaskill, a former inmate at Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests monetary relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

At this time, the Court finds it is appropriate to exercise its authority under § 1915A. This action is subject to summary dismissal.

### **The Complaint**

Plaintiff's Complaint sets forth the following allegations: Plaintiff reported a blister or a boil on his lower left leg to Officer Cole on October 6, 2015. (Doc. 1, p. 6). The blister had green and yellow pus continuously discharging. *Id.* Cole sent Plaintiff to health care. *Id.* Plaintiff saw Blake Woods, who examined the sore, took a culture, put a band-aid on the area and prescribed ibuprofen and Bactrim (sulfatrim DS). *Id.* Plaintiff alleges that Woods told him then that the infection was MRSA. *Id.* He asserts that he should not have been sent back to his living unit, but instead, should have been admitted and placed into quarantine in the health care unit. *Id.*

The next day on October 7, 2015, Plaintiff complained to Cole that the band-aid that Woods had given Plaintiff was soaked through with pus and that bodily fluids were running

2

down his leg. *Id.* Cole sent Plaintiff to the health care unit again, where a nurse provided him with a dressing for the area. *Id.*

Plaintiff returned to the health care unit on October 16, 2015 to see Woods. (Doc. 1, p. 7). On that day, Woods allegedly told him that the wound looked like a spider bite. *Id.* Plaintiff reminded Woods that he had diagnosed the issue as MRSA on October 13, 2015. *Id.* Woods told Plaintiff the Bactrim wasn't working and prescribed a 10-day course of minocycline instead. *Id.* Woods also ordered showers and dressing changes. *Id.* Woods once again refused to admit Plaintiff to the health care unit. *Id.* Plaintiff took the medication as directed for approximately 1 day, but experienced nausea, faintness and lightheadedness. *Id.* He alleges that Nurse Dorsey told him to stop taking the medication when he complained about these symptoms and that he did not take it after October 16th or 17th . (Doc. 1, p. 8).

Plaintiff reported to health care on October 17, 2015 for his shower and informed Perkins that he had no soap to shower with because he hadn't been to commissary in approximately a month. (Doc. 1, p. 7). Plaintiff then asked Officer Pie for soap. *Id.* Pie directed him to Officer Hamilton, who directed him back to Pie. *Id.* Neither Perkins, Pie nor Hamilton helped Plaintiff get soap for his mandatory shower on October 17, 2015. *Id.* Nurse Dorsey and another nurse changed Plaintiff's dressing. (Doc. 1, p. 8).

On October 19, 2015, Plaintiff told Cole that he had another medical emergency because his wound was hurting him and he needed an antibiotic. (Doc. 1, p. 8). Cole said he didn't think the doctor was at work that day, but told Plaintiff he'd check. *Id.* Plaintiff never heard back from Cole. *Id.* Plaintiff was called to health care later that evening and told that he was supposed to see the doctor on the 19th, but no one had issued him a call pass by mistake. *Id.* Plaintiff was put on the list for October 20, 2015 to see Woods, but was not seen that day. (Doc.

1, pp. 8-9). Plaintiff complained to Lt. Christopher, who told Plaintiff that he'd check with the nurses and that Plaintiff should go back to the housing unit. (Doc. 1, p. 9). He was rescheduled to see Woods on October 22, 2015 but had to be rescheduled again. *Id.* Plaintiff told Dorsey that he needed medication and she gave him Bactrim, which was the first antibiotic that Plaintiff had tried and that had not worked. *Id.*

Plaintiff saw Woods again on October 27, 2015. *Id.* He told Woods that the infection had not healed. *Id.* Woods offered Plaintiff a band-aid, but Plaintiff declined. *Id.* Plaintiff told Woods that he had 5 more days of the Bactrim. *Id.* Woods ordered 10 more days of shower and dressing changes and scheduled a follow-up visit for 1 week. *Id.* Woods declared that Plaintiff's wound had healed on November 24, 2015 and discontinued treatment, although Plaintiff disagreed with that assessment.

Plaintiff alleges that 3-D-27, his living unit at Shawnee, had black mold and other growths in the showers, and that inmates were rarely given cleaning supplies. (Doc. 1, p. 6). He also alleges that the shower in the health care unit, which he was permitted to use, was also unsanitary because there were bandages lying around, it was heavily used by other inmates and the ceiling vent was rusty. (Doc. 1, p. 9).

Plaintiff alleges that he informed Counselor Nance of the situation on October 26, 2015. *Id*. Although Nance returned Plaintiff's grievances, Plaintiff alleges that Nance did not conduct a proper investigation. (Doc. 1, p. 10).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 7 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1** – Woods was deliberately indifferent to Plaintiff's serious medical need, in violation of the Eighth Amendment when he refused to quarantine Plaintiff in the health care unit, gave Plaintiff a band-aid instead of a dressing, delayed in changing his medication, and did not timely follow up with Plaintiff;

**Count 2** – Cole was deliberately indifferent in violation of the Eighth Amendment when he told Plaintiff he would check to see if the doctor was in on October 19th and never followed-up with Plaintiff;

**Count 3** – Perkins was deliberately indifferent to Plaintiff's serious medical need when she refused to help him find soap on October 17, 2015 in order to take his medically ordered shower;

**Count 4** – Pie was deliberately indifferent to Plaintiff's serious medical need when he refused to help Plaintiff find soap on October 17, 2015 in order to take his medically ordered shower;

**Count 5** – Christopher was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he refused to immediately send Plaintiff over to the health care unit;

**Count 6** – R. Nance did not conduct a proper investigation into Plaintiff's grievances;

**Count 7** – The condition of the showers at Shawnee, both in Plaintiff's cell block and the health care unit, violated the Eighth Amendment.

*Deliberate Indifference to Serious Medical Needs*

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d

1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

As an initial matter, Plaintiff repeatedly asserts that actions taken by the defendants are "medically negligent." However, in a § 1983 case, "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006). There is no indication that Plaintiff intended to proceed on a medical malpractice claim under state law and he did not submit the required affidavit to do so pursuant to Illinois State law, 735 ILCS 5/2-622. The Court therefore does not construe any of Plaintiff's claims as arising under state law. To the extent that Plaintiff is asserting that acts of medical negligence constitute deliberate indifference, his theory is legally frivolous.

As to **Count 1,** Plaintiff has alleges that Blake Woods committed several acts that he believes show deliberate indifference. First, he has alleges that Woods failed to admit him to the health care unit and place him into quarantine. But Woods was actively taking steps to control

6

Plaintiff's infection, including prescribing painkillers and antibiotics. While Plaintiff may have disagreed with Wood's medical judgment that he did not need to be quarantined, that does not state a claim for deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("[M]ere disagreement with a doctor's medical judgment [does not] amount to deliberate indifference."). Significantly, Plaintiff does not allege that he suffered any additional harm from not being quarantined or that any other prisoner suffered harm.

Plaintiff also faults Woods for giving him a band-aid instead of a full dressing. He alleges that the band-aid became saturated and had to be replaced with a dressing. Once again, Plaintiff has not alleged that he suffered any resulting injury. The saturation and failure of the band-aid, while certainly unpleasant and potentially a risk to others, did not harm Plaintiff. As soon as Plaintiff complained to health care, they gave him a full dressing. At most, this is a minor issue of negligence, not deliberate indifference.

The same is true for Plaintiff's other allegations against Woods. Plaintiff asserts that Woods was deliberately indifferent because he prescribed him an antibiotic that did not work and another antibiotic that caused side effects. However, Plaintiff has provided no facts from which the Court could conclude it plausible that Woods did either those things to either deliberately harm Plaintiff or with knowledge of a substantial risk of harm to Plaintiff. Further, although Plaintiff faults Woods for the gap between the time he went off the second antibiotic and the time he was re-medicated, he does not allege that he told Woods that he was going off the antibiotic or asked his advice about it. Thus, Plaintiff's allegations regarding the antibiotic prescriptions do not state a plausible claim of deliberate indifference.

Plaintiff also faults Woods for the length of time between various follow-up visits. His allegations suggest that that anytime he was concerned about his condition, it constituted an

7

"emergency." Again, without more, Plaintiff's allegations merely indicate a disagreement in medical judgment. Medical staff was aware of Plaintiff's condition and had prescribed treatment. Additionally, he has also not alleged that he suffered any specific harm as a result of having his follow-up appointments delayed a few days. Plaintiff's allegations do not suggest that an emergency existed and a short delay in scheduling a follow-up is insufficient to assert a viable claim of deliberate indifference.

Plaintiff's allegations in **Count 2** against Defendant Cole is likewise fail to state a claim. Plaintiff alleges that he raised his condition with Cole, presumably Plaintiff's unit officer, on 3 occasions. Cole's response on the first 2 occasions was to send Plaintiff to the health care unit immediately. The Court presumes that Plaintiff's problem is with the third incident, in which Cole told Plaintiff that he'd check with health care, but never got back to Plaintiff. However, Plaintiff also states that he went to health care that evening and the next day and he has not alleged that he suffered any specific harm as a result of this incident. As such, Plaintiff's allegations against Cole do not state a colorable deliberate indifference claim.

In **Counts 3 and 4**, Plaintiff claims that Perkins and Pie were deliberately indifferent to his serious medical need when they refused to provide him with soap on October 17, 2015. Plaintiff has not alleged that missing one of his prescribed showers caused him any harm. It is also clear that neither Perkins nor Pie told Plaintiff that he could not take a shower – they allegedly did not act to help him find soap on that day. That being the case, Plaintiff's claim that Pie and Perkins' refusals to help him find soap on one occasion is insufficient to state a claim for deliberate indifference.

Turning to **Count 5**, Plaintiff alleges that he told Lt. Christopher that he had an appointment at the health care unit for which he had not received a health care pass and that

Christopher told him that he'd ask the nurses after lunch instead of immediately sending Plaintiff over to the health care unit. Plaintiff did not report to health care until 2 days later, at which time he was rescheduled again. Plaintiff has not alleged that Christopher was in charge of managing call passes, nor has he alleged that Christopher took action to keep Plaintiff from the health care unit. Other than the infection, which health care was already undertaking to treat, he has not alleged that he suffered a new or acute symptom and he has not alleged that he suffered any harm attributable to the delay. Thus, Plaintiff's allegations that Christopher was deliberately indifferent are legally insufficient.

*Counts 6 and 7*

In Count 6, Plaintiff alleges that Nance failed to adequately respond to his grievance because he did not conduct a proper investigation into Plaintiff's allegations. Plaintiff does not attribute deliberate indifference to Nance. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). Rather, he asserts that Nance responded to his grievances too quickly and could not have conducted a proper investigation.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore,

9

Plaintiff's claim against Nance for failing to adequately investigate his grievance fails to state a claim.

Finally, Plaintiff's claim in **Count 7** must also be dismissed. Plaintiff has alleged that the showers in his housing unit had mold and that the shower that he was permitted to use in the health care unit was busy and had rust and bandages. In order to succeed on a claim for inhumane conditions of confinement, an inmate must establish: (1) that he was housed under conditions that were " 'sufficiently serious' so that 'a [jail] official's act or omission results in the denial of the minimal civilized measure of life's necessities' ", and (2) the defendant was deliberately indifferent to that risk. *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). The plaintiff must show that the officials actually knew of the condition but refused to take reasonable steps to resolve it. *Townsend*, 522 F.3d at 773; *Grieveson*, 538 F.3d at 775.

Plaintiff's allegations that the shower in the health care unit was used by too many other patients, was rusty and was used to store bandages do not suggest that Plaintiff was denied "the minimal civilized measure of life's necessities." Plaintiff cannot expect a private shower in prison. Further, he has not alleged that the bandages were used or dirty, just that they were "around" the shower. There is no allegation that the bandages harmed or could have harmed him in some way. Additionally, while rust is certainly not ideal, rust is not harmful to health merely by being present in the environment, and Plaintiff has not alleged that he ingested or otherwise came into contact with the rust. Plaintiff's allegations that the shower in the health care unit created a serious condition are insufficient to state a viable claim.

Plaintiff's allegation that the shower in his living unit had mold presents a more serious question as mold infestation may present a serious condition. *See Board v. Farnham*, 394 F.3d

469, 486 (7th Cir. 2005). That said, Plaintiff has not alleged that he complained to any of the named defendants about the mold. Plaintiff cannot hold defendants liable for failure to act if they were never put on notice of the condition in the first place. Personal involvement is a touchstone in any § 1983 litigation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). For this reason, **Count 7** also fails to state a claim.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1-7** are dismissed without prejudice for failure to state a claim. As this case is being dismissed for failure to state a claim, the Court will permit Plaintiff to amend once as a matter of course. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013).

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support his claims, within 28 days of the entry of this order (on or before July 24, 2017). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice.

Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Plaintiff is warned, however, that the Court takes the issue of perjury seriously, and that any facts found to be untrue in the Amended Complaint may be grounds for sanctions, including dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: June 26, 2017**

                                             **s/STACI M. YANDLE**
                                             **U.S. District Judge**